UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JESSE OSBORNE | ) | |
| | ) | |
| v. | ) | No. 3:04-00493 |
| | ) | JUDGE CAMPBELL |
| CITY OF FRANKLIN, et al. | ) | |

**CONSOLIDATED FOR DISCOVERY**

| | | |
|---|---|---|
| JOHN CALVIN REED | ) | |
| | ) | |
| v. | ) | No. 3:04-00519 |
| | ) | JUDGE CAMPBELL |
| CITY OF FRANKLIN, et al | ) | |

MEMORANDUM

I. Introduction

Pending before the Court are Defendants' Motion For Summary Judgment, as to Plaintiff Osborne (Docket No. 14 in Case No. 3:04-00493); Defendants' Motion For Summary Judgment, as to Plaintiff Reed (Docket No. 12 in Case No. 3:04-00519); and Defendants' Motion To Strike Or, In The Alternative, Motion For Clarification (Docket No. 33 in Case No. 3:04-00493).

For the reasons set forth below, the Motions For Summary Judgment are GRANTED in part, and DENIED in part. Defendants are entitled to summary judgment on all claims except those brought for age discrimination under the ADEA and the THRA.

Defendants' Motion To Strike is DENIED.

By accompanying Order, the trials in both cases are continued to allow the parties sufficient time to complete the alternative dispute resolution process.

II. <u>Factual and Procedural Background</u>

In separate actions, Plaintiffs Reed and Osborne, both employees of the City of Franklin, brought this action against Defendants City of Franklin, Tennessee, Director of the Solid Waste Management Department Joe Williams, and City Administrator James Johnson arising out of the failure to promote them to the position of Assistant Director of the Solid Waste Management Department. (Docket Nos. 1, 9 in Case No. 3:04-0493; Docket Nos. 1, 8 in Case No. 3:04-0519). Plaintiffs raise claims under the Equal Protection and Due Process Clauses of the United States Constitution; under Title VII for reverse gender discrimination, 42 U.S.C. §§ 2000e, et seq.; the Age Discrimination in Employment Act, 28 U.S.C. §§ 628, et seq. ("ADEA") for age discrimination; and the Tennessee Human Rights Act, Tenn. Code Ann. §§ 4-21-101, et seq. ("THRA") for reverse gender and age discrimination.

Except as noted, the parties have agreed to the following facts. The City of Franklin is a municipal governmental entity located in Williamson County, Tennessee. (Plaintiffs' Responses To Defendants' Local Rule 8(B)(7)(B) Statement Of Material Facts As To Which They Contend There Is No Genuine Issue For Trial, at ¶ 1 (Docket No. 17 in Case No. 3:04-0519; Docket No. 29 in Case No. 3:04-0493)). The City is governed by a Mayor and Board of Aldermen, and the day-to-day operations of the City are handled by a City Administrator. (<u>Id.</u>, at ¶¶ 2, 3).

Sometime during the calendar year 2002, Defendant Joe Williams, Director of the City's Solid Waste Department, began having discussions with the City Administrator, Defendant James Johnson, regarding staffing needs for the Solid Waste Department, including the creation of an Assistant Director position. (<u>Id.</u>, at ¶ 215). In May, 2003, the City posted a vacancy for the Assistant Director position. (<u>Id.</u>, at ¶ 266).

2

On June 2, 2003, Defendant Johnson sent a Memorandum to Defendant Williams stating that he had completed an initial review of the 27 applications received for the new position, and had selected seven applications which merited further consideration and review. (Id., at ¶¶ 270-273). Defendant Johnson suggested that they discuss criteria again and select 3-5 applicants to interview. (Id., at ¶ 274) Defendant Johnson attached to the Memorandum a "Finalist Matrix" he had prepared, which included the names Mark Adams, Rebecca Caldwell, Sandy Cole, Donna Dede, Jennifer Fascitelli, Jesse Osborne and Calvin Reed. (Id., at ¶ 275). Defendant Johnson prepared a point system for the criteria of Education, Governmental Experience, Solid Waste Operations Experience, Safety Operations Experience, and Supervisory experience. (Id., at ¶ 276). On the Finalist Matrix, Fascitelli scored 21 points; Plaintiff Osborne, Adams and Caldwell scored 18 points; and Plaintiff Reed scored 16 points. (Id., at ¶ 277).

Defendant Johnson also attached to the Memorandum a list of three groups, labeled A, B and C. (Id., at ¶ 282). Defendant Johnson defined the applicants in Group A as those who "[m]eet or Exceed Desired Qualifications of Education and Experience." (Id., at ¶ 283). Johnson placed Caldwell, Dede, Cole, Fascitelli, Plaintiff Reed, Adams, and Plaintiff Osborne in Group A. (Id., at ¶ 284).

By Memorandum dated June 2, 2003, Defendant Johnson invited Lisa Clayton, Steve Grubb and Jamie Geer to join he and Defendant Williams in comprising the interview committee for the new Assistant Director position. (Id., at ¶ 287-288). The Memorandum states that the Human Resources Department will prepare a list of questions, and "as always," the Department Director will make the final selection from among the top three finalists. (Id., at ¶ 289).

An initial certification list, dated June 12, 2003, was subsequently prepared and

3

circulated by the Human Resources Department to Defendants Williams and Johnson. (Id., at ¶¶ 303-305). On the initial certification list, points for the candidates were awarded as follows:

- Education: 3 points for Associates degree; 4 points for Bachelor's degree; 5 points for Bachelor's degree in Business/Public Administration;

- Solid Waste Experience: 1 point for each year of experience in Solid Waste, including supervisory experience;

- Other experience: 1 point for each year of Management/Professional/Supervisory experience excluding any Solid Waste experience;

- Oral interview: Average of 5 interview scores by committee;

- Residence: 2 points if resident of City of Franklin; 1 point if resident of Williamson County;

- Veteran: 2.5 points if Veteran; 5 points if disabled Veteran.

(Id., at ¶ 306).

Based on that point system, the candidates' scores were as follows:

1. Sandy Cole        64.20
2. Jesse Osborne     53.80
3. John Calvin Reed  44.55
4. Mark Adams        43.10
5. Donna Dede        41.50
6. Rebecca Caldwell  40.50

(Id., at ¶ 307).

The list awarded Plaintiff Osborne 31 points and awarded Plaintiff Reed 14.25 points for Solid Waste experience, or 1 point for each year of experience, including supervisory experience. (Id., at ¶¶ 308-309). The list awarded Caldwell 1.5 points for Solid Waste experience. (Id., at ¶ 310). While she was ranked sixth overall on the initial certification list, Caldwell ranked second to Cole based on oral interview scores. (Id., at ¶ 311). Despite having

4

no Solid Waste experience, Cole was ranked first overall. (Id., at ¶ 312). The list did not impose any maximum limit or cap on the number of years of experience in Solid Waste that could be awarded to an applicant. (Id., at ¶ 313).

Through a Memorandum dated June 12, 2003 to then Human Resources Director Judith Looney, Defendant Johnson expressed his dissatisfaction with the certification list spreadsheet. (Id., at ¶ 315-316). Defendant Johnson complained that neither he nor Defendant Williams had the opportunity for input into the criteria used. (Id., at ¶ 317). Defendant Johnson also complained about assigning one point for each year of Solid Waste experience:

> Specifically, (one) 1 point for each year of experience in solid waste may or may not be relevant to the position itself. We are selecting a management level team leader. Experience in the solid waste profession is desired but I would dispute one point for each year (this reflects the old adage one years experience twenty times over). The other one point for each one year experience may not be reflective of experience relative to this job. Your spreadsheet gives credit for any experience in sold waste but provides no points for any other experience. But then, provides one point for management supervisory and yet provides no overall work experience credit for other duties.

(Id., at ¶ 319). Defendant Johnson also stated that the spreadsheet minimized the value of the oral interview by the committee: "I believe the members of the committee in their rankings clearly included all of the above factors in questions and evaluation of the candidates." (Id., at ¶ 320).

Although Plaintiffs admit that Defendant Johnson made these statements in the Memorandum, they deny that he was sincere. (Id.) Plaintiffs point to the deposition testimony of former Human Resources Director Looney that Defendant Johnson was advised of the points criteria before the selection process began, and that Caldwell had been preselected for the position. (Id.) Plaintiffs also point out that Looney advised Johnson before the selection process

5

began that the points criteria would be the same as had been used in selecting the Assistant Director for Water/Wastewater. (Id.) Plaintiffs cite a Memorandum from the Human Resource Department to Defendant Johnson, dated June 12, 2003, defending the process used to create the original certification list. (Exhibit 6 to Looney Deposition).

In a separate Memorandum to Director Looney and Defendant Williams on June 12, 2002, Defendant Johnson, "for discussion purposes," recalculated the certification list excluding the column entitled "Solid Waste Experience" and the column entitled "Other Experience." (Id., at ¶¶ 321-322). The Memorandum states that, under this calculation, the results were substantially different: 1. Cole; 2. Caldwell; 3. Reed; 4. Adams; 5. Dede; and 6. Osborne. (Id., at ¶ 323). Defendant Johnson stated in the Memorandum that he found this ranking to be much more reflective of the overall applicants based upon the committee efforts and the standard certification chart points added by the Human Resource Department. (Id., at ¶ 324).

Defendant Williams also sent a Memorandum to Defendant Johnson on June 12, 2003 regarding the certification list. (Id., at ¶ 325). Citing the Human Resource Manual sections on certification lists and examples of past certification lists from the Human Resource Department for three other departments, Defendant Williams stated that the example lists were "diametrical departures" from the certification list for the Assistant Director position. (Id., at ¶¶ 326-328). Defendant Williams requested that Defendant Johnson certify the list Johnson had prepared on June 12, 2003 as the official list, and asked that he be allowed to complete the process to name an Assistant Director, effective July 1, 2003. (Id., at ¶ 329).

In a Memorandum from Defendant Johnson to Human Resources Director Looney dated June 16, 2003, Defendant Johnson stated that he wanted to void the June 12, 2003 certification

6

list for the Assistant Director position, and establish a certification list "which better reflects appropriate experience for a position of this level." (Id., at ¶¶ 333-334). Defendant Johnson attached another certification list to the Memorandum. (Id., at ¶ 340). That list capped Plaintiff Reed's Solid Waste operations experience at 10 points total or a maximum of 5 points for 10 years or more experience and a maximum of 5 points for supervisory experience. (Id., at ¶ 341). The list capped Plaintiff Osborne's Solid Waste operations experience at 10 points total, or a maximum of 5 points for 10 years or more experience and a maximum of 5 points for supervisory experience. (Id., at ¶ 342). The list awarded Cole 0 points and awarded Caldwell 1 point for Solid Waste operations experience. (Id., at ¶¶ 343-344).

The revised list also gave 1 credit for each certification; capped "other experience" at 10 points; reduced from 5 to 4 the number of points given for a Bachelor's degree; and included any Bachelor's degree, not just one in Public Administration. (Id., at ¶¶ 348-352).

The revised list ranked the applicants as follows: 1. Cole; 2. Reed; 3 Caldwell; 4. Adams; 5. Dede; 6. Osborne. (Id., at ¶ 353). As compared to the original list, Cole remained the top ranked applicant; Plaintiff Reed moved up one spot from No. 3 to No. 2; Caldwell moved up from No. 6 to No. 3; Adams and Dede remained Nos. 4 and 5; and Plaintiff Osborne moved from No. 3 to No. 6. (Id., at ¶ 354).

Plaintiffs admit that Defendant Johnson had authority under the Human Resources Manual to change the certification list, but question his good faith in doing so, and point out that his actions were unprecedented. (Id., at ¶ 345). They point to a Memorandum dated June 16, 2003 from Director Looney to Defendant Johnson stating that she had "done all I can to protect the City of Franklin's interests in this case," and advising that "preselection is generally regarded

7

as a prohibited personnel practice by the Equal Employment Opportunity Commission." (Exhibit 11 to Looney Deposition).

Through a Memorandum to Defendant Johnson, dated June 16, 2003, Defendant Williams discusses the merits and criticisms of Cole, Reed and Caldwell, and announces his selection of Caldwell for the Assistant Director position. (Id., at ¶¶ 355-358). According to the Human Resource Manual, Defendant Johnson had the discretion to pick from the top three candidates. (Id., at ¶ 360).

On June 24, 2003, Plaintiffs Reed and Osborne attempted to file a grievance with the City of Franklin concerning Defendant Williams' decision to promote Caldwell. (Id., at ¶ 365). Defendant Johnson denied the request to file a grievance, stating that the Human Resource Manual was silent as to whether an individual had the right to contest the promotion of another. (Id., at ¶¶ 370-371).

Defendant Williams is a 42 year-old, white male. (Id., at ¶ 166). Defendant Johnson is a 53 year-old white male. (Id., at ¶¶ 237-239). Caldwell is a white female, and was 32 years old in June, 2003. (Id., at ¶¶ 247-250).

### III. Analysis

#### A. The Standards for Considering Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment may be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Meyers v. Columbia/HCA Healthcare Corp., 341 F.3d 461, 466 (6th Cir. 2003).

In order to prevail, the movant has the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In determining whether the movant has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Hopson v. DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

In order to defeat the motion, the nonmoving party is required to show, after an adequate time for discovery, that there is a genuine issue of fact as to every essential element of that party's case upon which he will bear the burden of proof at trial. Celotex Corp., 106 S.Ct. at 2553; Meyers, 341 F.3d at 466. To create a genuine factual issue, the nonmoving party must show "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Although the nonmovant need not show that the disputed issue should be resolved in his favor, he must demonstrate that there are genuine factual issues that "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. See also Hopson, 306 F.3d at 432.

A preponderance of the evidence standard is used in this determination. Id. Therefore, if the evidence offered by the nonmoving party is "merely colorable," or "is not significantly probative," the motion for summary judgment may be granted. Id. See also Matsushita Electric, 106 S.Ct. at 1356.

B. Due Process

Defendants argue that Plaintiffs' claims that the selection process violated their due process rights should be dismissed because Plaintiffs did not possess a life, liberty or property interest in being promoted to the Assistant Director position. Plaintiffs argue that their expectation of being promoted to the new position rose to the level of a legitimate claim of entitlement, and thus, a constitutionally-protected property interest for purposes of due process.

To establish a deprivation of due process rights, a plaintiff must first demonstrate that he was deprived of a constitutionally-protected life, liberty or property interest. Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). In the context of government employment, the courts have held that although a government employee may have a property interest in his actual job, the prospect of a promotion requires a separate analysis. See, e.g., Nunez v. City of Los Angeles, 147 F.3d 867, 871-73 (9th Cir. 1998).

In order to establish such an interest in a promotion, the plaintiff is to rely on "existing rules or understandings that stem from an independent source such as state law." Roth, 408 U.S. 564, 577. A mere "unilateral expectation" of a benefit or privilege is not sufficient; the plaintiff must have a "legitimate claim of entitlement to it." Id.

Plaintiffs argue that they had an expectation rising to the level of an entitlement in the point system that resulted in the original list of candidates. Plaintiffs point out that according to Rule IX, Section 2.4 of the City of Franklin's Human Resource Manual, the final selection is to be made from the top three candidates on the certification list, and that they were among the top three candidates on the original list.

To support their position, Plaintiffs principally rely on the Sixth Circuit's decision in Paskvan v. City of Cleveland Civil Service Commission, 946 F.2d 1233, 1236 (6th Cir. 1991).

10

The plaintiff in Paskvan alleged that he was on a list of police officers eligible for promotion to the rank of sergeant, and that even though he was ranked third on the list, he was not promoted with the other top 18 candidates. Id., at 1234. The plaintiff in that case also alleged that the practice of the city was always to grant promotions based on test grade rank, even though state law permitted the city to promote one of the three highest scoring candidates. Id. at 1235-36.

In this case, however, there was only one vacancy, and Plaintiffs have offered no evidence indicating that the City of Franklin had a prior practice of always promoting the second (in the case of Reed) or the third (in the case of Osborne) person on the list. The policy Plaintiffs cite allows the decision-maker to choose any of the top three candidates on the list, and the first person on the list, Sandy Cole, could have received the promotion under that policy. Thus, neither of the Plaintiffs, nor any other person on the original certification list, can be said to have had a legitimate claim of entitlement to the promotion. The fact that the point system was allegedly manipulated to raise Caldwell's ranking on a revised certification list may seem unfair to the Plaintiffs, but it does not bolster their claim of entitlement to the promotion for due process purposes.

Accordingly, the Court concludes that Plaintiffs have failed to create a genuine factual dispute that they had a constitutionally-protected interest in promotion to the Assistant Director position, and therefore, summary judgment is granted on the Plaintiffs' due process claims.

C. Gender Discrimination

Defendants argue that they are entitled to summary judgment on Plaintiffs' reverse gender discrimination claims brought under the Equal Protection Clause, Title VII and the

11

THRA.[1]

The THRA gender discrimination claims in this case are governed by the same evidentiary framework applied to Title VII claims. Tenn. Code Ann. § 4-21-101(a)(1); Parker v. Warren County Utility District, 2 S.W.3d 170, 172-73 (Tenn. 1999). Plaintiffs' equal protection claims for gender discrimination are also analyzed under the Title VII framework. Sutherland v. Michigan Dept. of Treasury, 344 F.3d 603, 614 (6th Cir. 2003).

This framework for analyzing a Title VII disparate treatment claim was established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In order to prevail under Title VII, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence. McDonnell Douglas, 93 S.Ct. at 1824. Plaintiff may establish a prima facie case of discrimination through direct or circumstantial evidence. Id.

In order to make this showing in a failure to promote case, in the absence of direct evidence of discrimination, a plaintiff must demonstrate: (1) that he is a member of a protected class; (2) that he applied and was qualified for a promotion; (3) that he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions. McDonnell Douglas, 411 U.S. at 800-04.

Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action at issue. Id. If

---

[1] Defendants contend that Plaintiff Osborne failed to raise an equal protection claim in his pleadings. The Court need not address this issue because even if he is determined to have raised such a claim, Defendants are entitled to summary judgment on the claim for the reasons set forth below.

12

the defendant meets this burden, the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext. Id. When the burden shifts back to the plaintiff, the plaintiff must come forward with evidence that the defendant's reason for the employment action is pretextual. Id.

In this case, Plaintiffs have not offered direct evidence of gender discrimination. Therefore, Plaintiffs must address the requirements of the prima facie case. As stated in Leadbetter v. Gilley, 385 F.3d 683, 690 (6th Cir. 2004), however, the Sixth Circuit has modified this four-prong test in cases of reverse discrimination, where a member of the majority is claiming discrimination. In such cases, a plaintiff satisfies the first prong of the prima facie case by "demonstrat[ing] 'background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" Id. (citations omitted). Id; Cook v. Caldera, 45 Fed.Appx. 371, 376, 2002 WL 1941013, at **5 (6th Cir. 2002). In Sutherland v. Michigan Dept. of Treasury, 344 F.3d 603, 615 (6th Cir. 2003), the Sixth Circuit explained that to show "background circumstances" sufficient to satisfy the first prong of the prima facie case, a plaintiff "may present evidence of the defendants' unlawful consideration of [gender] in employment decisions in the past."

Plaintiffs contend that the "background circumstances" prong is satisfied by evidence indicating that there is something "fishy" about the facts of the case at hand that raises an inference of discrimination, citing the decision of the D.C. Circuit in Harding v. Gray, 9 F.3d 150, 153 (D.C. Cir. 1993). Plaintiffs contend that the way the Defendants handled the selection process in this case is "fishy" evidence raising an inference of discrimination.

Assuming this definition of "background circumstances" would even be recognized by

13

the Sixth Circuit, the Plaintiffs have still failed to show that the alleged manipulation of the selection process in this case had the effect of selecting Caldwell from the pool of candidates *because of her gender.* On both the original and the revised list of candidates, another female, Sandy Cole, was ranked number one. If gender had been a factor in the allegedly "fishy" actions of the Defendants, they would not have needed to create the revised list to select a female instead of a male for the position.

The Court also notes that Plaintiffs have failed to offer any evidence that the two male decision-makers in this case, or the Franklin city government, had a history of considering gender in making employment decisions in the past. Under these circumstances, the Court is not persuaded that Plaintiffs have shown "background circumstances" sufficient to indicate that the Defendants are that unusual employer who discriminates against the majority. As Plaintiffs have failed to establish the first prong of their prima facie case, Defendants are entitled to summary judgment on Plaintiffs' reverse gender discrimination claims.

D. Age Discrimination

Next, Defendants argue that they are entitled to judgment on Plaintiffs' age discrimination claims. Both Plaintiffs have raised an age discrimination claim under the ADEA. Plaintiff Reed has also brought an age discrimination claim under the THRA. Under Tennessee law, age discrimination claims brought under the THRA are analyzed under the same framework as age claims under the ADEA. Moore v. Nashville Elec. Power Bd., 72 S.W.3d 643, 651 (Tenn. Ct. App. 2001)("This Court has construed the Tennessee Human Rights Act under the framework of the federal statutes upon which it was patterned, such as the Age Discrimination in Employment Act. . .").

14

In order to establish a prima facie case under the ADEA, a plaintiff must show that: (1) he was at least forty years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) after he was rejected, a substantially younger person was hired for the job. Walcott v. City of Cleveland, 123 Fed.Appx. 171, 177-178, 2005 WL 14982, at **6 (6th Cir. 2005); Burzynski v. Cohen, 264 F.3d 611, 621-22 (6th Cir.2001). Some courts state the fourth prong as requiring that the plaintiff show that a similarly-situated person who was not in the plaintiff's protected class received the job. Anthony v. BTR Automotive Sealing Systems, Inc., 339 F.3d 506, 515 (6th Cir. 2003).

If the plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant to articulate a non-discriminatory reason for its action. Id. If the defendant comes up with such a reason, the plaintiff must then demonstrate by a preponderance of the evidence that the defendant's proffered reason was a pretext for age discrimination. Id.

Defendants argue that neither Plaintiff has established a prima facie case because they cannot show they were subjected to an "adverse employment action," and they cannot show they were "similarly situated" to Caldwell. Neither argument has merit.

As for the second prong of the prima facie case, the Sixth Circuit has held that a failure to promote is an "adverse employment action." See Nguyen v. City of Cleveland, 229 F.3d 559, 562 (6th Cir. 2000); Johnson v. United Parcel Service, Inc., 117 Fed.Appx. 444, 450, 2004 WL 3008776, at **4 (6th Cir. 2004).

As for the fourth prong, the Sixth Circuit held in Anthony v. BTR Automotive Sealing Systems, Inc., 339 F.3d at 516, that individuals may be considered similarly-situated in a failure to promote case where both have experience making them "viable candidates" for the position.

15

In this case, the Defendants themselves viewed the Plaintiffs as similarly-situated to Caldwell by placing the Plaintiffs on the same list of qualified candidates (Exhibits 10 , 15 to Defendants' Notice of Filing (Docket No. 16)). Plaintiffs need not show they were the best candidates in the view of the Defendants in order to establish the fourth requirement.

Plaintiffs do not contend that Defendants have failed to state a legitimate, nondiscriminatory reason for the promotion decision -- that Caldwell was a better qualified candidate than the Plaintiffs -- but they do argue that a genuine issue of material fact exists regarding pretext. A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. Singfield v. Akron Metropolitan Housing Authority, 389 F.3d 555, 564 (6th Cir. 2004).

To demonstrate Defendants' stated reason for promoting Caldwell was pretextual, Plaintiffs point to the testimony of former Human Resources Director Looney, that Caldwell had been preselected for the promotion before the selection process began:

> . . . I even had conversations with Jay [Johnson] to that effect that Mr. Williams was bound and determined to select Ms. Caldwell for this position.
>
> * * *
>
> . . . I believed, quite frankly, based upon my conversations for months with Mr. Johnson that Ms. Caldwell had been preselected for the position, that this position was created and designed for her. It's not to say that there wasn't a need for an assistant Solid Waste Director, but I did believe that she had been preselected. . .
>
> * * *
>
> Mr. Johnson told me, sitting in his office, on more than one occasion, that Joe [Williams] intended to have Becky [Caldwell] in this job.

(Deposition of Judith Looney, at 35-37 (attached to Docket No. 32)). This testimony calls into

16

question the statements of Defendants Johnson and Williams that they chose Caldwell only after the selection process revealed her superior qualifications.

Looney also testified that she had obtained the prior approval of Defendant Johnson to use the same criteria for assigning points for the Solid Waste Assistant Director position as had previously been used for the Waste/Wastewater Assistant Director position. (Looney Deposition, at 24-27). This testimony calls into dispute Defendant Johnson's statements that he had not been given an opportunity for input into the criteria used. It also calls into dispute the reasons given by Defendant Johnson and Williams for changing the point system in the original certification list. The jury will have to resolve these factual disputes.

Given this testimony, the Court is persuaded that a genuine material factual dispute exists as to whether Caldwell's superior qualifications were the actual reason for her selection. Accordingly, Defendants are not entitled to summary judgment on Plaintiffs' age discrimination claims.

## IV. Conclusion

For the reasons set forth above, the Defendants' Motions For Summary Judgment are granted as to all claims, except the claims brought under the ADEA and the THRA for age discrimination.

It is so ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE